UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JUDY MARA WIMBERLY,

          Plaintiff,

v.                                CASE No. 8:20-cv-902-TGW

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,[1]

          Defendant.

_____

ORDER

The plaintiff in this case seeks judicial review of the denial of her claim for supplemental security income payments.[2]   Because the decision of the Commissioner of Social Security is supported by substantial evidence and does not contain any reversible error, the decision will be affirmed.

I.

The plaintiff, who was fifty-two years old at the time of the most recent administrative hearing and who has a limited education, has

_____

[1]   Kilolo Kijakazi became the Commissioner of Social Security on July 9, 2021, and should be substituted as the defendant.   See Fed. R. Civ. P. 25(d).

[2] The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 23).

worked as a dining room attendant and cleaner, housekeeper (Tr. 658, 695). She filed a claim for supplemental security income payments, alleging that she became disabled due to hepatitis C, arthritis and scoliosis of the back, stenosis, spine degenerative disc disease, rheumatoid arthritis, a herniated disc, titanium plate in neck, depression, and anxiety (Tr. 805–06).   The claim was denied initially and upon reconsideration.

At her request, the plaintiff received a de novo hearing before an administrative law judge.   The law judge found that the plaintiff had severe impairments that reduced her residual functional capacity, but that they were not disabling (Tr. 62, 70).   The district court subsequently reversed the decision of the Commissioner of Social Security for failure to consider adequately the opinions of treating physician Dr. John Amann (Tr. 683).   The Order of the Appeals Council remanded the case for further proceedings consistent with the district court's Order (Tr. 673).[3]

A different law judge conducted a hearing.   He found that the plaintiff had severe impairments of degenerative disc disease and obesity

---

[3] The Appeals Council also ordered the consolidation of this case with the plaintiff's claim for supplemental security income filed on February 9, 2015 (Tr. 673).

2

(Tr. 649).   The law judge concluded that, despite the plaintiff's impairments, she

> has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b).   The claimant can lift and/or carry twenty pounds occasionally and ten pounds frequently; stand and/or walk four hours in an eight-hour day and sit six hours in an eight-hour workday, with an option to sit/stand every thirty minutes without leaving the workstation.   The claimant can push/pull to the weights previously given.   The claimant can occasionally climb, balance, kneel, stoop, crouch and crawl, but never climb ladders, ropes or scaffolds.   The claimant must avoid concentrated exposure to hazardous machinery and unprotected heights.

(Tr. 651).

The law judge found that the plaintiff was unable to perform any past relevant work (Tr. 658).   However, based on the testimony of a vocational expert, the law judge determined that there are jobs that exist in significant numbers in the national economy that the claimant can perform, such as customer service clerk, cashier II, ticket seller, and office helper (Tr. 659).   Consequently, the law judge decided that the plaintiff was not disabled from April 4, 2011, through April 4, 2018, the date of the decision (Tr. 660).   The Appeals Council denied review, so that the law judge's decision became the final decision of the Commissioner.

3

II.

In order to be entitled to supplemental security income, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months."   42 U.S.C. 1382c(a)(3)(A).   A "physical or mental impairment," under the terms of the Social Security Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."   42 U.S.C. 1382c(a)(3)(D).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence.   42 U.S.C. 405(g).   Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938).   Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal

4

of the administrative findings." <u>Adefemi</u> v. <u>Ashcroft</u>, 386 F.3d 1022, 1027 (11th Cir. 2004) (<u>en banc</u>).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. <u>Grant</u> v. <u>Richardson</u>, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. <u>Celebrezze</u> v. <u>O'Brient</u>, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. <u>Lamb</u> v. <u>Bowen</u>, 847 F.2d 698, 701 (11th Cir. 1988).

III.

The plaintiff's sole argument is that the law judge failed to give controlling weight to the opinions of her treating neurologist, Dr. John

Amann (Doc. 24).   The contention is baseless because the law judge stated good cause for discounting those opinions.

Under the regulations applicable to this case, opinions from treating physicians are entitled to substantial or considerable weight unless there is good cause for not according them such weight.   Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004).   Good cause exists when the treating physician's opinion is not bolstered by the evidence, the evidence supports a contrary finding, or the opinion is conclusory or inconsistent with the physician's own medical records.   Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).   The court "will not second guess the ALJ about the weight the treating physician's opinion deserves so long as he articulates a specific justification for it." Hunter v. Social Security Administration, Commissioner, 808 F.3d 818, 823 (11th Cir. 2015).

In January 2012, and January 2013, Dr. Amann completed Residual Functional Capacity Questionnaires in which he essentially opined that the plaintiff is disabled from working ("Questionnaires") (Tr. 537–38; 619–20).   The Questionnaires are in a conclusory format, so that most of Dr. Amann's opinions are indicated by marks in boxes that correspond with the opined degree of limitation for each physical function.

6

Dr. Amann opined in the January 2012 Questionnaire that, due to cervical disc disease and cervical radiculopathy, the plaintiff could not sit for more than three hours in an eight-hour workday, she needs a five-minute break every 15 minutes, can never lift 10 or more pounds, and would be absent from work more than four times per month (Tr. 537–38).   He opined that the plaintiff's ability to reach and manipulate objects was reduced, but did not quantify that limitation (Tr. 538).   Dr. Amann did not respond to questions regarding the plaintiff's prognosis or the length of time the plaintiff could stand/walk (Tr. 537).

The law judge acknowledged Dr. Amann's opinion of the plaintiff's functioning and stated (Tr. 655–56):

> Pursuant to the Appeal Council's directive, the undersigned gave great consideration to the opinions of Dr. Amann.   The undersigned affords moderate weight to Dr. Amann's assessment dated January 2012 (Exh. B12F).   Dr. Amann supposed that the claimant could sit for up to thirty minutes at a time for about three hours in an eight-hour day. He did not indicate how long the claimant could stand or walk.   He indicated that it was "hard to quantify" how long the claimant could use her hands, fingers and arms.   He supposed that the claimant could occasionally lift and carry less than ten pounds.   Dr. Amann is a treating specialist. However, this assessment is of limited value since it does not address the claimant's ability to stand, walk,   reach   or   perform   fine   and   gross

7

manipulations.   He did not offer a prognosis and did not provide a supporting narrative.   Dr. Amann issued this opinion only eight weeks after the claimant's cervical fusion.   Thus, this assessment reasonably reflects a very time-limited set of restrictions.   This opinion is not consistent with clinical findings around the date of the assessment.   In September 2011, Dr. Varas found no significant limitations.   After the claimant's cervical surgery, treatment records in December 2011 and January 2012 indicate that the claimant was recovering well from her surgery.   In March 2012, Dr. Amann noted that the claimant had continued pain, but she declined a cervical epidural injection.   She did not seek treatment again until October 2012. At this appointment, the claimant complained only of numbness, not neck pain.   She reported some tenderness in her cervical spine, but her range of motion in her neck was full.

The law judge's reasoning states good cause for discounting Dr. Amann's opinion of disabling limitations in the 2012 Questionnaire, and it is supported by substantial evidence.

Thus, the law judge correctly states that Dr. Amann did not provide a meaningful explanation for his opinion of extreme limitations which, in itself, is a recognized basis for discounting the opinions in the Questionnaire. See 20 C.F.R. 416.927(c)(3) ("The better an explanation a source provides for an opinion, the more weight we will give that opinion."); Lewis v. Callahan, supra, 125 F.3d at 1440; Johns v. Bowen, 821 F.2d 551,

8

555 (11th Cir. 1987); see, e.g., Brown v. Commissioner of Social Security, 442 Fed. Appx. 507, 512 (11th Cir. 2011) (The law judge stated good cause to not give controlling weight to the treating physician's opinions stated in forms which did not reference his treatment records or adequately explain his opinions.); Burgin v. Commissioner of Social Security, 420 Fed. Appx. 901, 903 (11th Cir. 2011).

As indicated, Dr. Amann's opinions consist primarily of marks in boxes. Although Dr. Amann identifies two diagnoses, they do not justify Dr. Amann's opined extreme limitations because "[t]he mere existence of an impairment does not reveal the extent to which it limits a claimant's ability to work ...." Robinson v. Astrue, 365 Fed. Appx. 993, 995 (11th Cir. 2010), citing Moore v. Barnhart, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005); see also McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986) (The physician needs to translate how abnormal clinical findings affect work functioning.). Thus, cervical disc disease and cervical radiculopathy can vary greatly in degree, and are not necessarily disabling. Consequently, the law judge did not err in discounting the 2012 Questionnaire because it is conclusory.

9

Furthermore, the law judge reviewed the objective medical evidence and could reasonably conclude that, while the plaintiff's impairments cause substantial functional limitations, they do not support Dr. Amann's opinions of disabling physical dysfunction.    <u>See</u> 20 C.F.R. 416.929(c)(2) ("Objective medical evidence ... is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of symptoms and the effect those symptoms ... may have on [a plaintiff's] ability to work ...."); <u>Barclay</u> v. <u>Commissioner of Social Security Administration</u>, 274 Fed. Appx. 738, 741 (11th Cir. 2008) (lack of supporting medical records may be considered in rejecting the treating physician's opinion); <u>see</u>, <u>e.g.</u>, <u>Grant</u> v. <u>Social Security Administration Commissioner</u>, 710 Fed. Appx. 426 (11th Cir. 2018) (noting normal clinical findings, such as normal gait, range of motion and muscle strength, were inconsistent with an opinion of disabling functional limitations).

Thus, the law judge found that the 2012 Questionnaire responses are "not consistent with clinical findings around the date of this assessment" (Tr. 656).    Specifically, the law judge discussed that consultative examiner Dr. Ricardo Varas, who conducted a detailed physical examination of the plaintiff in September 2011, did not identify any

10

significant limitations (id.).    The law judge summarized Dr. Varas's findings (Tr. 653):

> The claimant was able to get on and off the table and in and out of a chair with no apparent difficulty.   The claimant was also able to tie and untie her shoes with no problems.   Her gait and extremities were normal.   She had normal range of motion in her elbows, forearms, wrists and shoulders.   Her cervical spine was within normal limits.   Her lumbar examination was normal with the exception of some mild paraspinal muscle tenderness.    The claimant's hips, knees and ankle[s] appeared normal.    She had negative straight leg raise tests.   She was able to walk on her heels and able to squat.    Neurological findings were completely within normal limits. ... Although Dr. Varas formed a final impression of chronic lower back pain with scoliosis with radiculopathy, he simultaneously noted that the claimant's musculoskeletal exam was only mildly abnormal on her lower back with some decreased monofilament perception on her feet.

Furthermore, the law judge noted, after the plaintiff had cervical surgery in November 2011, Dr. Amann stated that the plaintiff was recovering well from her surgery (Tr. 656).    Specifically, Dr. Amann reported in December 2011 that the plaintiff was

> making reasonable recovery from cervical surgery.    Her arm symptoms have resolved. She has stiffness in the neck but no severe pain. ... She is ready to begin some range of motion exercises ...

11

(Tr. 546).   Additionally, during a physical examination in June 2012, the plaintiff's neurological and extremities systems were normal (Tr. 635). Moreover, the law judge noted, despite Dr. Amann's highly-restrictive assessment of Plaintiff's cervical symptoms, several months passed before the plaintiff followed up with Dr. Amann, at which time the plaintiff reported some tenderness in her cervical spine, but she did not complain of neck pain and she had a full range of motion in her neck (Tr. 656).   The law judge elaborated (Tr. 653):

> the claimant's gait appeared normal.   There were no signs of atrophy.   The claimant had some decreased sensation in her fingers, hand and foot. She had full strength in her upper extremity, except for in the interossei.   She had a positive Phalen's test.   She had no sensory loss and no motor weakness. Her coordination was intact. Her fine motor skills were normal.

In sum, substantial evidence supports the law judge's finding that, while the plaintiff's impairments impose some functional limitations, the medical records fail to reveal the type of significant abnormalities one would expect if the claimant were in fact disabled. See Barclay v. Commissioner of Social Security Administration, supra, 274 Fed. Appx. at 740.

12

The plaintiff argues that the "reasoning used by the ALJ for not giving more weight to Dr. Amann's opinions was ... not supported by the evidence" (Doc. 24, p. 18).   The arguments are meritless.

The plaintiff objects to the law judge's finding that the 2012 Questionnaire was of "limited value" (id., p. 19).   She argues that, "just because Dr. Amann did not opine limitations for all work functions, does not mean that the limitations he did opine could be ignored" (id.).

Initially, the plaintiff fails to acknowledge that the law judge also stated that the 2012 Questionnaire was of limited value because Dr. Amann did not state the plaintiff's prognosis and that he failed to provide a supporting narrative for his opinion of extreme limitations.   The law judge could reasonably find that these circumstances undermine the probative value of the 2012 Questionnaire.

Furthermore, the plaintiff's contention that the law judge "ignored" the 2012 Questionnaire is frivolous (see Tr. 655–56).   The law judge not only stated that he gave it "great consideration," it is apparent that the law judge considered the 2012 Questionnaire on its merits, as he explained that the extreme limitations therein were inconsistent with the

clinical findings during that time period, and cited examples of such clinical findings (Tr. 656).

In fact, the plaintiff quibbles with the law judge's citation to some of those normal examination findings (Doc. 24, pp. 19–20). Specifically, the plaintiff objects to the law judge mentioning consultative examiner Dr. Varas' normal examination findings, arguing that "Dr. Amann and others did find significant limitations during that same time period" (id., p. 19). In this regard, the plaintiff recounts clinical abnormalities, such as spinal tenderness and reduced range of motion, and identifies MRI and X-ray abnormalities (id., pp. 19–21).

The plaintiff's argument misapprehends the standard of judicial review, which is very deferential to the law judge. Thus, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983); Lawton v. Commissioner of Social Security, 431 Fed. Appx. 830, 833 (11th Cir. 2011) ("While the record does contain some evidence that is contrary to the ALJ's determination, we are not permitted to reweigh the importance attributed to the medical evidence."). Therefore,

upon judicial review, it is insufficient to identify evidence that is consistent with, or supports, disability; the evidence must compel that conclusion. See Adefemi v. Ashcroft, supra, 386 F.3d at 1027 ("findings of fact ... may be reversed ... only when the record compels a reversal").

       Here, the law judge acknowledged the plaintiff's clinical and imaging abnormalities (Tr. 652–656).   However, he disagreed that, considering the evidence in its totality, the objective findings supported disabling limitations (see Tr. 655). That determination is supported by substantial evidence, as the law judge identifies numerous clinical findings that were normal or near normal (see Tr. 652–656).   The law judge noted, for example, that the claimant consistently displayed normal motor strength, balance, gait and fine motor skills, and that records from her primary care physician (Jay Care) indicate generally normal examinations, with unremarkable extremities and no neurological deficits (Tr. 654–55). See, e.g., Lustgarten v. Commissioner of Social Security, 794 Fed. Appx. 843, 846 (11th Cir. 2019) (the law judge reasonably considered in rejecting the treating physician's opinion of disabling limitations that the plaintiff had a normal range of motion in her arms and legs, normal motor strength and sensory responses, walked with a steady gait, and had no swelling in the feet

and lower legs).

Under these circumstances, the plaintiff's identification of some evidence that could support a finding of disability is insufficient. Adefemi v. Ashcroft, supra, 386 F.3d at 1027 ("[T]he mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings."). Thus, the plaintiff's disagreement with the law judge essentially is a difference of opinion as to the weight to be given to certain circumstances. The law judge, however, is given the responsibility to assess those circumstances so that the plaintiff's different opinion must yield. Graham v. Bowen, 790 F.2d 1572, 1575 (11th Cir. 1986) ("The weighing of evidence is a function of the factfinder, not of the district court."); Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (deference is given to the law judge's decision if it is supported by substantial evidence even though the evidence may preponderate against it).

The plaintiff also cites to her subjective complaints to doctors that her pain was "incapacitating," and that she could not hold things in her hands for more than a few seconds without her hands falling asleep (Doc. 24, pp. 20–21). The law judge, however, found that the plaintiff's subjective complaints were not fully credible (Tr. 652). That credibility

16

determination is unchallenged.   Therefore, the law judge was not required to accept uncritically the plaintiff's complaints of debilitating pain and limitations in determining the weight given to the 2012 Questionnaire.   <u>See</u>, <u>e.g.</u>, <u>Majkut</u> v. <u>Commissioner of Social Security</u>, 394 Fed. Appx. 660, 664 (11th Cir. 2010) (law judge did not have to accept the opinion of a treating physician based upon the plaintiff's subjective complaints when the plaintiff was not fully credible).

Finally, the plaintiff argues that the "reasoning used by the ALJ for not giving more weight to Dr. Amann's opinions [in the 2012 Questionnaire] was … contrary to this Court's previous decision" (Doc. 24, p. 18).   This argument focuses on the law judge's comment that "Dr. Amann issued this opinion only eight weeks after the claimant's cervical fusion.   Thus, this assessment reasonably reflects a very time-limited set of restrictions" (Tr. 656).

The plaintiff argues that the court's Order remanding this case precludes the law judge from concluding that Dr. Amann's opined limitations were temporary on the ground that they were given shortly after surgery (Doc. 24, p. 18; <u>see</u> Tr. 682–83).   The plaintiff takes the court's comments out of context.

The court stated about the prior law judge's decision (Tr. 682):

> In according this opinion [Dr. Amann's 2012
> Questionnaire] "little weight," the ALJ simply
> stated that Plaintiff had neck surgery in November
> 2011 and Dr. Amann's opinion "reflects post-
> surgical precautions more than anything."
>
> …. Dr. Amann's records show that despite
> surgery, Plaintiff continued to have numbness and
> pain in her hands and feet, thus undercutting the
> ALJ's speculation that they were limitations
> related to surgery.   Accordingly, the ALJ failed
> to articulate good cause for not fully crediting Dr.
> Amann's January 2012 opinion.

Here, the law judge does not merely speculate that the opinions in the 2012 Questionnaire were temporary solely based on the temporal connection to the plaintiff's surgery.   Rather, the law judge explains that those limitations are also reasonably considered temporary because Dr. Amann did not provide a prognosis indicating that they were permanent (nor did Dr. Amann opine in the Questionnaire that they were permanent limitations), and the law judge identified post-surgery medical findings and treatment that are inconsistent with such a conclusion.[4]   Therefore, this argument fails.

---

[4]Consequently, even if the temporal proximity factor were excluded, there is no reason to think that the law judge would have found that the opined limitations were permanent. See Stultz v. Commissioner of Social Security, 628 Fed. Appx. 665, 669 n.4 (11th Cir. 2015) (error in assessing medical opinion not reversible error when other

18

The plaintiff argues further that the court directed in the prior decision that the law judge may not conclude that the "clinical findings do not support Dr. Amann's opinions" (Doc. 24, pp. 18–19). It is unreasonable to suggest that the court would direct the law judge to disregard medical evidence that is inconsistent with a physician's opinion, and there is no comment by the court that remotely suggests that.

In sum, the plaintiff's challenges do not show that the law judge erred in discounting the weight given to Dr. Amann's responses in the 2012 Questionnaire.

B.   The plaintiff also challenges the law judge's decision to discount Dr. Amann's opinions in the January 2013 Questionnaire (Tr. 619–20).   The 2013 Questionnaire includes extraordinary limitations that the plaintiff could sit for no more than <u>five</u> minutes at a time and one hour total in a workday, and that she could not lift or carry <u>any</u> weight (Tr. 619).   Dr. Amann attributed these limitations due to neuropathy and "possible" cervical radiculopathy (<u>id</u>.).

---

reasons are sufficient); <u>Diorio</u> v. <u>Heckler</u>, 721 F.2d 726, 728 (11th Cir. 1983).

The law judge discussed, in detail, his reasons for reducing the

weight given this opinion (Tr. 656):

> The undersigned affords some weight to Dr.
> Amann[']s opinion dated January 2013. (Exh.
> B17F).   Dr. Amann is a treating specialist.
> However, this assessment reveals more extreme
> limitation[s] than his prior assessment.   Dr.
> Amann indicated that the claimant could sit for no
> more than five minutes at a time and no more than
> one hour total out of an eight hour day.   He
> opined that the claimant could never lift any
> weight.  He also reported that the claimant had
> significant limitation in using her hands, fingers
> and arms.   Even the claimant testified that she
> could sit for ten to fifteen minutes before needing
> to change positions.   The claimant also testified
> that she could hold a five pound [bag] of sugar
> with at least one hand.   Thus, Dr. Amann's
> assessment is more extreme than the claimant's
> own allegations.   Dr. Amann's opinion is also
> contrary to his findings upon examinations
> surrounding the date of his assessment.   In July
> 2013, PA Bacheldor, who worked in the same
> office as Dr. Amann, noted that the claimant's
> physical examination was normal except for
> tenderness in her lower lumbar area along with a
> straight leg raise.   The claimant had normal
> balance, no sensory loss, no motor weakness and
> normal fine motor skills.   Likewise,
> examinations performed by Dr. Jarquin in January,
> February and March 2013 indicated that the
> claimant had limited range of motion, but no
> muscle weakness and no neurological deficits.
> Only a few months prior to this opinion, Dr. Varas
> noted that the claimant's musculoskeletal exam
> was only mildly abnormal on her lower back with

20

some decreased monofilament perception on her feet. Additionally, Dr. Amann failed to offer a persuasive narrative supporting his conclusions. While he noted the claimant's diagnosis, this alone does not explain the claimant's supposed limitations, especially when clinical findings tend to negate them. Furthermore, this opinion was prior to the claimant's surgery in October 2013, which should have alleviated her symptoms to some degree. Finally, Dr. Amann's assessments are both contrary to the claimant's ability to drive, walk her dogs and shop for groceries. Specifically, the claimant's inability to lift any amount of weight in particular would seem to preclude these activities.

The law judge clearly states ample good cause for discounting Dr. Amann's extreme opinions, and those reasons are supported by substantial evidence. See Lewis v. Callahan, supra, 125 F.3d at 1440.

Initially, it is noted that, similar to the 2012 Questionnaire, Dr. Amann's opinions in the 2013 Questionnaire are wholly conclusory. As indicated, this deficiency itself states good cause for discounting the 2013 Questionnaire. See id. The failure to state a meaningful explanation for the Questionnaire responses is especially important considering the extremity of the opined limitations and that Dr. Amann had not treated the plaintiff for several months before completing that Questionnaire.

21

Furthermore, as the law judge noted, "Dr. Amann's opinion is also contrary to his findings upon examinations surrounding the date of his assessment" (Tr. 656). See 20 C.F.R. 416.929(c)(2); Belle v. Barnhart, 129 Fed. Appx. 558, 560 (11th Cir. 2005) (normal findings on examination are relevant to whether the plaintiff's allegations of debilitating impairments are credible).   For example, the law judge pointed out that, "[i]n July 2013, PA Bacheldor, who worked in the same office as Dr. Amann, noted that the claimant's physical examination was normal except for tenderness in her lower lumbar area along with a straight leg raise" (Tr. 656).   Furthermore, the law judge detailed that, at the appointment, the plaintiff demonstrated normal balance, no sensory loss, no motor weakness and normal fine motor skills (id.). Similarly, treatment notes from Dr. Amann's office in August 2013 showed that, although the plaintiff had tenderness in her spine and pain on bending and twisting, she had normal fine motor skills, no motor weakness, no sensory loss, intact balance, gait and coordination (Tr. 1155–56).   Therefore, as the defendant argues, "the significant limitations Dr. Amann indicated in the 2013 RFC questionnaire did not match his physician's assistant's subsequent clinical observations a few months later and so the ALJ was authorized to assign it only some weight" (Doc. 25, p.

22

16).   See, e.g., Scott v. Colvin, 652 Fed. Appx. 778, 780 (11th Cir. 2016) (good cause to reject physician's opinions that are inconsistent with his own medical records).

Additionally, the law judge noted that contemporaneous clinical findings by treating physician Dr. Alvaro Jarquin in January, February, and March 2013 are inconsistent with debilitating limitations, specifying that, although treatment notes "indicated that [she] had limited range of motion ... [there was] no muscle weakness and no neurological deficits" (Tr. 656).

Moreover, the law judge noted that the "significant gaps in [the plaintiff's] treatment" are inconsistent with Dr. Amann's opinion of disabling limitations.   See 20 C.F.R. 416.927(c)(2)(i) (frequency of examination is a consideration in determining the weight to give a physician's opinion).

The law judge explained (Tr. 655) (emphasis added):

> [T]he claimant sought no neurological [treatment] from after her laminectomy in October 2013 until after her motor vehicle accident in June 2016. She also had no treatment at all from May 2014 to December 2015.   Given the plethora of records before and after these dates, this total absence of treatment strongly suggests that the claimant was doing well in this period.

23

In sum, substantial evidence clearly supports the law judge's determination that Dr. Amann's opinion of extreme and marked limitations in the 2013 Questionnaire is not supported by his treatment notes or the medical record as a whole and, therefore, the law judge reasonably found the opinions therein unpersuasive.   See Lewis v. Callahan, supra; Barclay v. Commissioner of Social Security, supra, 274 Fed. Appx. at 740 (lack of supporting medical records may be considered in rejecting the treating physician's opinion); Crawford v. Commissioner of Social Security, 363 F.3d 1155, 1159 (11th Cir. 2004) (treating physician's report "may be discounted when it is not accompanied by objective medical evidence or is wholly conclusory").

Finally, the law judge discussed that the plaintiff engaged in activities of daily living that were inconsistent with the extreme limitations in the 2013 Questionnaire, which also states good cause for discounting those opinions.   See Jarrett v. Commissioner of Social Security, 422 Fed. Appx. 869, 873 (11th Cir. 2011) ("We have held that an ALJ does not need to give a treating physician's opinion considerable weight if evidence of the claimant's daily activities contradicts the opinion."); Crow v. Commissioner, Social Security Administration, 571 Fed. Appx. 802, 806–07 (11th Cir.

24

2014) (evidence of the plaintiff's daily activities provided good cause to discount the treating physician's opinion); Forrester v. Commissioner of Social Security, 455 Fed. Appx. 899, 902 (11th Cir. 2012) (The law judge does not need to give a treating physician's opinion considerable weight if evidence of the claimant's daily activities contradict the opinion.).

The law judge discussed that, "[a]t various times during the disability process, the claimant acknowledged that she can drive, prepare quick meals, perform some housecleaning, walk her dogs, shop for groceries … [and] visit with friends…" (Tr. 652; see also Tr. 650, 655).   Therefore, the law judge could reasonably find that the plaintiff's activities are inconsistent with Dr. Amann's opinions of extreme functional limitations.

The plaintiff argues that the law judge's reasoning does not state good cause for discounting the 2013 Questionnaire.   The contention is meritless.

The plaintiff asserts that the law judge's comment that the plaintiff's laminectomy likely "alleviated her symptoms to some degree" is "[not] justification for failing to give the treating neurosurgeon's opinion full weight" (Doc. 24, p. 22).   Specifically, the plaintiff contends that,

> [i]f she did improve sometime after her recovery
> from the lumbar surgery in October of 2013, the

25

> ALJ still needed to assess whether Dr. Amann's
> opinions would need to be given controlling or
> great weight for that time period up to the
> improvement after the 2013 surgery.   Rejecting
> Dr.   Amann's   opinions   outright   due   to
> improvement some two and a half years after the
> onset of disability was not appropriate.

(<u>id</u>.).   This contention is frivolous.   The law judge's lengthy explanation

for discounting the extreme opinions show that he did not reject Dr. Amann's

opinions "outright" due to post-surgical improvement (<u>see</u> Tr. 656).   In

fact, the law judge noted many normal clinical findings before the plaintiff's

laminectomy in explaining why he discounted the extreme limitations in the

2013 Questionnaire (<u>id</u>.).

   The plaintiff also quibbles with the law judge's finding that she

testified to greater functional capabilities than opined by Dr. Amann (Doc.

24, p. 22).   Specifically, the plaintiff contends that the differences between

them are slight and, therefore, the "ALJ is trying to make an inconsistency

where none exists" (<u>id</u>.).

   The plaintiff is referring to the following discussion by the law

judge (Tr. 656):

> Dr. Amann indicated that the claimant could sit for
> no more than five minutes at a time and no more
> than one hour total out of an eight hour day.   He
> opined that the claimant could never lift any

26

weight.   He also reported that the claimant had significant limitation in using her hands, fingers and arms.   Even the claimant testified that she could sit for ten to fifteen minutes before needing to change positions.   The claimant also testified that she could hold a five pound[ bag] of sugar with at least one hand.   Thus, Dr. Amann's assessment is more extreme than the claimant's own allegations.

The plaintiff argues that her testimony that she would need to change positions after 10-15 minutes is not significantly different from Dr. Amann's opinion that a change would be necessary every 5 minutes.   This is not an insignificant difference; in all events, the law judge's point is that Dr. Amann's assessment is more extreme than the plaintiff's own exaggerated allegations, and there is ample record support for that conclusion.   In addition to the examples above, the law judge identifies several activities of daily living that contradict Dr. Amann's opinions of the plaintiff's functional limitations (see Tr. 656) (stating that Dr. Amann's "assessments are both contrary to the claimant's ability to drive, walk her dogs and shop for groceries.   [T]he claimant's inability to lift any amount of weight in particular would seem to preclude these activities.").   See Magill v. Commissioner of Social Security, 147 Fed. Appx. 92, 94 (11th Cir. 2005), citing Phillips v. Barnhart, 357 F.3d 1232, 1240–41 (11th Cir. 2004)

("[A]n ALJ need not give a treating physician's opinion considerable weight if the applicant's own testimony regarding her daily activities contradicts that opinion.").

Moreover, it is noted that, in February 2013, one month after Dr. Amann completed the 2013 Questionnaire, the plaintiff testified before an administrative law judge in this case that she could sit for 20-30 minutes at a time; that she uses a computer "[o]ff and on" during the day, and that she has no problem driving to her brother's home 15-20 minutes away (Tr. 99, 102–03). Therefore, this challenge to the law judge's decision fails.

Finally, the plaintiff argues that injuries she sustained in 2014, when she fell down a flight of stairs, and in 2016, when she was a pedestrian hit by a car, "continued to support Dr. Amann's opinion of her work limitations" (Doc. 24, p. 24). This contention is also meritless.

Initially, the plaintiff does not explain how medical findings related to these accidents show that Dr. Amann's opinions were supported by objective medical evidence at the time they were given. Since the accidents occurred years after Dr. Amann completed the Questionnaires, those medical findings could not have been the basis for his opinions (see also Tr. 655 (the law judge found that the plaintiff was doing well before the

accidents)).   Therefore, they do not undermine the law judge's finding that Dr. Amann did not provide adequate objective medical evidence to support his opinions of extreme limitations.   See 20 C.F.R. 416.927 (c)(3) ("The more a medical source presents relevant evidence to support [his] medical opinion .... The more weight we will give that opinion.").   Arguably, the plaintiff's citation to such evidence underscores the lack of objective medical findings supporting Dr. Amann's opinions.

Furthermore, there is ample medical evidence generated after these accidents that is inconsistent with debilitating functional limitations. Thus, in July 2015, the plaintiff underwent an examination with consultant Dr. Edwin Lamm, who found that the plaintiff's cervical spine was "within normal limits," and that other examination findings were mostly normal (Tr. 1389).   Dr. Lamm opined that there is "no evidence of physical limitations that would prevent her from finding some kind of employment" (id.). Notably, the plaintiff told consultative psychologist Maria Jimenez that she walks without assistance, prepares meals on her own, drives independently, and is independent in her personal care (Tr. 1393).

On June 25, 2016, the plaintiff was examined at a hospital after she was hit from behind by a slow-moving vehicle (Tr. 1516–17, 1673–74).

29

The plaintiff had been walking home from a friend's house (Tr. 1828).   The plaintiff exhibited normal ranges of motion in her back and musculoskeletal systems, and her neurological functioning was normal (Tr. 1674).   She was discharged that day with diagnoses of lacerations and contusions (Tr. 1673). The following month, an examination showed that the plaintiff had a normal gait; normal ranges of motion in the back and musculoskeletal systems; and normal sensation, strength, and pulses in the bilateral extremities (Tr. 1631–32).

In February 2017, a physical examination showed that the plaintiff had normal range of motion in her musculoskeletal system, normal strength, non-tender back, no neck abnormalities, normal motor functioning, and no focal neurological deficits (Tr. 1576–77).   Additionally, in May 2017, the plaintiff exhibited normal strength, normal gait, normal pulses, full range of motion of all joints, no focal neurological deficits, and no extremities abnormalities (Tr. 1896, 1900–01).

In sum, the law judge stated good cause for discounting Dr. Amann's opinion of debilitating functional limitations in the 2013 Questionnaire, and that determination is supported by substantial evidence. See Hargress v. Social Security Administration, Commissioner, supra, 883

F.3d at 1302, 1305 (11th Cir. 2018); Lewis v. Callahan, supra, 125 F.3d at 1440 ("Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.").

While the plaintiff identified some evidence of abnormalities, they did not compel the law judge to find her disabled, especially considering the contrary medical evidence.   See Adefemi v. Ashcroft, supra, 386 F.3d at 1027 ("findings of fact … may be reversed … only when the record compels a reversal").

It is, therefore, upon consideration,

ORDERED:

That the Commissioner's decision is hereby **AFFIRMED** The Clerk shall enter judgment in accordance with this Order and CLOSE this case.

DONE and ORDERED at Tampa, Florida, this 15th day of September, 2021.

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE

31